April 22, 2012 Good morning, and may it please the court. My name is Neal Mullen, with Smith Mullen for the appellants, and I respectfully request 30 minutes of rebuttal time. Thank you, Your Honor. Mr. Mullen, before you begin, let me see if I can put these two ships passing in the night into some sort of perspective. Your blue brief alleged that you have standing based on eligibility under the earlier plans, and the district court should have considered those claims and not dismissed the complaint. Correct. And you argued, secondly, that the district court erred in finding appellees did not violate the anti-cutback rule when vested benefits accrued under the earlier plans had been eliminated and found no 2 or 4G claim had been pled. Correct. The red brief comes in, and they don't deal with standing. They go into statute of limitations, which, of course, the district court had never discussed or ruled upon. And the district court, they argue, did not abuse the discretion in denying your motion to amend the complaint, but you haven't alleged that in your blue brief as an issue on appeal. So then the gray brief comes in, the reply brief. Now you're arguing willful concealment from Martin of the earlier plans, and you're saying because of this willful concealment, this illegal concealment, not only were you unable to state a substantive claim, even though you did, you filed a complaint, you tried to, but that any statute of limitations defense should fail because PSE&G caused the delay, and in any event, your claims are timely. So this case is now, of course, that's all new, the willful concealment. That was never in the case before. Right. So we're into now temerity, obstruction, willful concealment, and statute of limitations, none of which were before the district court. Do I state this correctly? You state it all correctly. Okay. So where do we go from here? Here's where we go. Aren't we a reviewing court? Yes, you are. Okay. And I'm not the one that injected an issue that wasn't addressed by the court below. I think I agree with you. So I'll start with the issues that the court made a fundamental error below. Below, we had a complaint under ERISA, and the court dismissed it under 12B6, and this is important. No, no, under 12B1, didn't it? 12B1 and 12B6. And 12B6, that's right. And under 12B6, to state the obvious, but it's important for this case, all the allegations in the complaint should have been viewed in a light favorable to my clients, and all reasonable inferences should have been drawn in my favor. That's critical here, because the court did the literal opposite. The court, I want to finish with this. The court didn't only look at the pleadings, as is normally the case in the 12B6 matter. The court also looked at planned documents submitted by the defendants. Wait, wait, wait, wait, wait. You say looked at planned documents. The court may have looked at planned documents, but what planned documents were at issue here? Because the complaint, you say, along with the incorporated planned documents, we don't know what they were. And indeed, when you filed your complaint, you didn't even know what they were. I didn't have them. You didn't have them. I didn't have them for two years by then. I won't use shrill and strident language, but they hadn't given it to me. I had demanded in the administrative phase. It should have been given to me in initial disclosures when I filed my federal complaint. But you filed your complaint for ERISA violations without even knowing what the plan was or whether your people were eligible, which is flirting, I think, with Rule 11. Dangerously so, because of the position I was put in. Because I was under the impression as a lawyer, thinking hard to preserve my client's rights, that probably somewhere in the past, they didn't have the language that a lot of plans added on starting in 1998. There was escape clauses. My sense was. Well, what about probably somewhere in the past? And it turned out I was 100% right. Well, no, but when you filed your complaint, you had no good faith basis for believing you had a basis for filing an ERISA complaint. Your Honor, I did. What? My basis for believing it was that the company was refusing to give me the prior plan documents, although they were required under regulation to do so. That let me know in the administrative phase that they had something to hide. They refused and were facing a penalty of $110 a day in the administrative process, though I demanded it in writing repeatedly. They refused to give me the earlier plans, and that told me, and that's what I had to go on. Now, then, of course, a practicing lawyer is in a difficult bind. Let me ask you a question, Mr. Mullen. I'm going to quote to you from what you call your statement of the case, which is some preliminary statement before the numbered paragraphs in the complaint. And it says as follows. Defendant PSE&G sought to evade ERISA by entering into a relationship with various outsourcing companies to provide, quote, independent contractors, unquote, who accomplished a variety of vital and necessary tasks, ellipse. By this intentional misclassification of plaintiffs and potential class members as, quote, independent contractors, defendant wrongfully denied them participation in valuable pension and employment welfare benefits. And you go on to talk some more about this wrongful classification. Now, that's what I understood you to be saying by this preliminary statement was the focus of your complaint. That's correct. Okay. That it was a misclassification. You're putting them in the position of being independent contractors. Absolutely. All right. Now, in the numbered paragraphs, including the ones you recite specifically in your briefing, you talk about, again, the misclassification. And I'm talking here about numbered paragraphs 35, 36, 37, 38, in that range. Here's what I'm struggling with. There's not only not a mention of the anti-cutback statute. I'm trying to find where there's anything in here that says we qualify or even hints we would have qualified under an earlier plan. They changed the qualifications. They took it away from us. There's nothing I can see in here that's anything like that. Can you point me to something like that? Did you not plead the anti-cutback statute specifically in the complaint? Not even specifically. You've made an allegation that under Rule 8, you've got sort of the ragu argument, which is it's in there. It's in there someplace. And I'm trying to find out where it's in there, and I need you to point me at that. Because under Rule 8A, we've got to hold you to notice pleading, right? So help me see where in the document. And I've got it in front of me, and I hope you've got it, too. Where in the document is there language that you rely on that would fairly put someone on notice that there's an anti-cutback statute in play here? It's not there. You're not going to find language that fairly puts you on notice that there's an anti-cutback statute. That's why I asked to amend the pleading. And also, nor could there have been. It's not there. Nor could there have been because you didn't even know of the plans then. In violation of the law, PSMG had withheld the prior plans from me and my clients. So you're looking for relief here based on plans that you never pled because you didn't know about them, and based on an anti-cutback claim, which almost by definition you couldn't have pled because you didn't know about the plans. I would say this, Your Honor. You're very close. I would say this, Your Honor, that in my complaint, I plead about the plans generally. It was my hope that when they finally complied with the law and gave us the plans, I would find entitlement to eligibility for benefits under the earlier plans. It was reasonable for an employment lawyer to think that. And you did. And I was right. But you're way too late. Well, I think perhaps you could say I'm early, Your Honor. I don't see why I would be too late. Perhaps the statute of limitations runs from the moment in 2006, March, April, May, when finally PSMG gave me the earlier plans. What authority do you have to support that? Well, it's just the way the statute of limitations works under Montrose. But your clients, they knew from the early days that they were classified as independent contractors. Yes. As the case, as the court says in Gaucho, that doesn't give rise to knowing that you have an erisic plan. Remember, in a whole line of decisions by this court, Kurz, Montrose, Rauch, I cite them in my opinion, in our circuit, it's not a numb, it's not a triggering event just that you know you've been classified as an independent contractor. You have to also know that you have a claim under ERISA. You have to be given facts. What facts did they need to know that? They needed to know that there were plans that gave ERISA rights to common law employees. If the employees back in 1982 and 1987 had those plans and didn't take action, I wouldn't be here today, Your Honor. The district court didn't deal with those plans either. I mean, the district court referenced the 1990, implicitly referenced the 1998 to 2005 plans. Yes. So in addition to not making findings in statute of limitations or concealment, they never, he never even addressed the plans you now say before us your clients are eligible under. Even though, as Your Honor knows, I detailed them in my opposition brief below because they were dumped on me after the PSC&G filed their motion to dismiss. Then they dumped several thousand prior plan documents on me. I scrambled and put them in my brief. I detailed them. I put them before the court. But none of this was ever pledged. Well, it couldn't have been pledged because PSC&G concealed these documents from me. That's another, that's a new claim too. The only reason I'm raising it now here is because they raised here as an alternative basis to stay in the judgment below statute of limitations. I'm forced then in reply to raise things I haven't addressed below. Okay. But it's not my fault. Talking about this statute of limitations a little further. Yeah. I was under the impression, and you straighten me out if I'm wrong, that under Miller v. Fortis benefits and the Padovnik v. Postal Service cases, that there was this idea in the statute of limitations law around ERISA that a clear repudiation starts the ball, the clock ticking. By the allegations of your complaint, your clients were told from the very outset, we're not giving you benefits. You're not seeing a dime in benefits from us. So that they knew that from the outset. Your Honor, that is not in my complaint. My clients don't, I don't talk in my complaint about what my client's state of mind was and when they learned or what they learned about benefits. And also, that would be a reading of the complaint contrary to the 12B6 standard. Well, wait a second. The allegations should be read in a light favorable to me. I'm aware of the standard. I know, Your Honor. But let me tell you that this, when I read this, I read it and understood that it was saying specifically that they were told, the defendant PSC&G maintained these benefits. They were limited and they have been wrongfully excluded. Now hold on just a minute. Looking at paragraph 42, that they, quote, failed to review the facts with the plaintiffs. That they didn't give them the documents relating to the pension. And in 42C, that they made misrepresentations to plaintiffs and class members who were classified as independent contractors. That they were not entitled to participate in the pension and employee welfare benefit plans when in fact they were. Those are the representations they made in 2003 when they denied the claim. My complaint does not address that. Your Honor, if you look at 833, you're invited to look at 833 paragraph 21. I say on information and belief, PSC&G characterized my clients as independent contractors. I'm saying that, look. Is there anything in the record, Mr. Mullen, that says they ever told them something different? No. I mean, I've quoted to you two places. No, but the defendants. Hold on just a second. I'm sorry. I've quoted you two portions. Your introductory statement where you say they've always called them independent contractors. And 42C where you say they specifically misrepresented that they were independent contractors and weren't going to get benefits. Is there anywhere in here where you say they led us to believe we were going to get benefits? Because I read this complaint and everything in it said to me the opposite. That they lied to us and said we were never going to get benefits. Your Honor, I don't speak anywhere in that complaint to my client's state of mind or actual knowledge. It's simply not in that complaint. Defendants have attempted to portray it that way. It's not in that complaint, Your Honor. What I'm saying in that complaint is that the company has, on information and belief, characterized them as independent contractors. Otherwise, why would they not have given them benefits? But I don't discuss. And remember, Your Honor, I know I'm going back to something elementary. The complaint has to be read in a light favoring me. Inferences have to be drawn favoring my client, my position. Drawing those inferences in my favor, the allegations you're reading, don't establish anything about my client's actual knowledge, which is required for the three-year statute of limitations. Mr. Mullins, help me out. What's in here that would allow me to draw the inference you want? Point me to something in here. The only inference, it's not just that I want to draw it against your folks. I've got no dog in this fight. I'm trying to figure out how anyone could draw any other inference from your allegations other than that they were told and understood, in your view, the wrong thing. They were told, you're independent contractors, you're not getting benefits. That's in here. That is in here. How would I draw an inference from that that they understood, oh, I'm going to get benefits? No way in the complaint does it say my clients were told they were independent contractors. What you do say, defendants, quote, defendants wrongfully denied them participation in valuable pension and employer welfare benefits. That's what happened in 2003 when I attempted to pursue an administrative claim. And then, Your Honor, referring specifically, once again, paragraph 20 more than my complaint. That would be only Martin. Yeah. And that's the only, so there was no denial of participation until 2003? You don't know they were hired in 1981, 1986, 1989? No, Your Honor. 2003 is when we did the administrative complaint. I understand that. They were told. When were they denied participation in valuable pension and employment welfare benefit plan? When were they denied participation? They were denied it during the entire course of their employment from 1981 in Martin's case, 1986 or 1989 in the other two plaintiffs' case, all the way up through the present. Where is the denial in the record? Well, the denial is in the record. Where did they apply for benefits and were denied them? That's in Volume 2. We have the application for benefits. Where? 2003, Martin? Yes. That's it? We filed an administrative claim and we sought these benefits and then we were denied. And then we appealed within PSC&G and then we were denied. Now, Martin started there in 1981. Started in 1981. And if you believe what's in the complaint, and I do, he was told then, although I think one can argue he probably, well, he was told then he was an independent contractor. The implication is from the outset, I'm not so sure that he didn't, that you can't, there was no use of that phrase in the earlier plans. Your Honor, let's say that he was told then. Let's for a person of argument say he was told then. So from 1981 to 2003, 22 years, there was no denial of benefits? Let me accept the argument of what the panel is saying. Let's suppose he was told specifically during the 80s and 90s, you're an independent contractor, you're not entitled to benefits. Let's further suppose that was not true because the people telling him that knew they had plans that entitled common law employees to benefits. But let's say he believed them because he felt they were speaking to him in good faith. Should he now be punished for that because he believed the misleading statements of his employers? Where is the evidence that the employer ever gave him those plans? Put him on notice of them so he could have gone to a lawyer and say, why am I not allowed to have these benefits? The crime my client has committed to me is that he believed what PSNG told him. He shouldn't be held for that. So the statute begins to run under your theory when the client walks in the lawyer's office and the lawyer has a chance to review the plan and see what it says. I think that's fair and I think that's consistent with Montrose and Coase and Rausch. That has to be. An employer should not be allowed to rip off a risk of beneficiaries by concealing from them plans that might give them valuable benefits. And then when the employee finally, after shaking the tree, gets them, comes to court, then the employer who has lied to him, misled him, says, oh, you're too late, statute of limitations. I'm sorry. That's not justice. That would be so wrong and so inconsistent with the fiduciary obligations imposed by Congress on those who run these pension plans. Thank you. Is the court. My name is Brian earlier and I represent the PSNG at Belize. I think first I'd like to address some of the statements made related to the supposedly with improper withholding of documents from Plans Council. I think there's a couple of things that the plan has failed to point out. First, during that time period, there was a stipulated stay of discovery by letter agreement. And that agreement can be filed in the district court docket at number seven. Now, nevertheless, we voluntarily provided all of these documents 32 weeks before Judge Kavanaugh ruled on the motion to dismiss. At the risk of stating the obvious, the plaintiffs had an absolute right under Rule 15A1 to amend their complaint to say anything new based on those plan documents. Well, I don't understand Mr. Mullen's argument to be that you should have given them to a month earlier. I understand his argument to be that they should have gotten them 20 years ago. Well, let me say this, Your Honor, and I'll turn immediately then to the statute of limitations. And recognizing fully that Judge Kavanaugh didn't reach the statute of limitations, which we argued in the district court, all of the claims were time barred. And on 12B6, this court can consider the motion to dismiss. Well, are we supposed to make factual findings before we consider that? And don't you think we'd have to before we could consider a statute of limit? Or do you think it's so clear as a matter of law that we can and should decide that issue? I think, Your Honor, under the framework established, and what we need to be aware of, and I'll circle back to this in a moment, when we drill down with precision, we're talking about two different claims, really, with two different statutes of limitations and two different constructs. But this is clear. Make no mistake about it. In this very unique circumstance where the plaintiff says, you didn't give me benefits, well, what necessarily follows from that? They are not given for the 20-something years since Mr. Martin started providing services to PSC&G. They get no benefit cards, no sorts of IDs. When they go to the pharmacist, and this is pointed out in my brief, or a physician's office, they don't reach for a PSC&G benefit card because they don't have them. There are no 401K account statements speaking to their contributions to the plans. There are no summary plan descriptions given to them. There are no opportunities to attend orientation meetings and that sort of thing. Those facts can't be disputed. Mr. Mullen says because they did not know that they were covered by the pre, let's say, 94 or the 98 plans. Okay. And that's your fault. Now we have to drill down and take a very, very careful look at the construct of the statute's limitations. And what we're talking about, again, are two different claims here. The principal claims... Let me ask you a question before you get there because the district judge never dealt with statute of limitations. And Mr. Mullen didn't raise it as an issue on appeal, but in many of them. Well, and, Your Honor, again, as I said... Did you concede that plaintiffs satisfied the earlier plan's eligibility requirements? Admittedly, Your Honor, I've never looked at the issue for the simple reason that in the first instance... Well, it's not a complicated issue because under the 94, until the October 17th, 94 amendment, any employee who has been in service for one year is covered under the pension plan. That's it. Well, again, the earlier versions carved out independent contractors. No, no, no, I'm not talking... That was in 98 or even later. I'm talking about the nine... Let's say pre-October 17th, 94, when the plan didn't mention independent contractors. Do you concede or do you take issue with the fact that the three plaintiffs here were eligible for benefits? Your Honor, I take issue with that question. Why? Because the plan, for example, a leased employee shall not be eligible. They weren't leased employees. This is not an allegation they were leased employees. Well, we know this is in the administrative record. Prior to October 17th, 94, it just simply said an employee with a year of service. Boom. And that covered all of them, it seems to me. Let me stop, Your Honor. In the administrative record, the company raised the question that Mr. Martin was working for an employee leasing company called Butler Technologies. There was no dispute... Hold on a second. I thought it was undisputed. In fact, I thought it was conceded that these folks were common law employees. Is that right? Well, for purposes we argued only in the district court. This is critical. What we did is we looked at the current version of the plan... Hold on just a second. I think this is a yes or no question. Then you can explain. Did you or did you not concede that these folks were common law employees? As stated in my brief, yes, Your Honor. Okay. So if these folks were common law employees, isn't the answer to Judge Berry's question yes, before the plan was amended to say it doesn't matter whether you're a common law employee or not. If we call you an independent contractor, that's enough. Before that change was made, common law employees like these folks were covered, right? I mean, it seems to me that that's a logical progression. It's pretty hard to dispute. Do you have a basis for disputing it? Except for the language that carves out leased employees in that particular 1994 plan document. But that's at odds with your concession. I mean, we're taking a record on the basis that the record's presented to us. You don't get to go back on appeal and say, yeah, well, I make that concession with this exception. The concession was made. That's the record we're dealing with. And on the basis of that concession, it seems to me there's really no exit for you from the room that you put yourself in. But you help me understand if there is one because I'd like to hear it. All right, Your Honor. Let's assume that, in fact, they were eligible under the current plan, under the previous plans, pre-1998. Well, we're not. Judge Beare and I aren't looking for an assumption. We're looking for a position. You took the position that these were common law employees. If that's the truth, setting aside the statute of limitations for a moment, if that's the truth, then isn't it also the truth that when you later change the plan, something that these folks would have had the benefit of, they were no longer going to get the benefit of? Is that right? Well, let me be clear. The court actually asked a couple of questions. Okay. I will concede that they were eligible under the predecessor versions of the plan. From that premise, however, it remains that these claims were hopelessly time-barred. Okay. And with the court's permission, I'd like to discuss the statute of limitations. Please. Which I submit, given the nature of the allegations and the Third Circuit's rule, which is unique, that the court can look at statutes of limitations in this context, it is clear beyond doubt that these claims are hopelessly time-barred. And here's why. And the court mentioned the Miller v. Ford's opinion. Now, again, I will come back. I need to parse the 50281B benefits claim from the breach of fiduciary duty claims. But speaking generally, this court said in Miller just last year that ERISA's statutes of limitations are statutes of repose. Now, what the defendants and its acknowledgements stated clearly in Miller v. Ford's and is echoed in Romero v. Allstate and Renge v. Sanofi, the defendants have an expectancy interest in knowing when a breach of duty claim is time-barred. Now, there are important considerations here that arise. We are talking about in large measure, or by way of example, the defined benefit pension plan of the PSC&G company. As the plaintiffs themselves, and I think it's in paragraph 36 of their original complaint, acknowledge the plan's liabilities are determined through these many years, and I guess we're going back to 1981, by actuaries. The actuaries determine the liabilities which are settled in each of the years. Now, what the plaintiffs are saying is that they could come back, and if they prevail with a broad, certified class, what you would see is an enormous increase in the liability of the defined benefit pension plan. We have an interest, and again, it's clearly articulated in Miller v. Ford, is we have an interest in finality. And of course, the problem is exacerbated by the fact, and I think it's paragraph 44 of the complaint, where the plaintiffs say, I think in one year alone, there were 6,700 individuals who may be affected by this. Go back to 1981, and we're talking about tens of thousands of participants. These are qualified plans. Now, explain this, though. Speak directly, if you would, to Mr. Mullen's assertion that interpreting the statute of limitations the way you've described would be fundamentally unjust because it would reward PSC&G for hiding the ball, and then when the reality was finally uncovered, it would allow PSC&G to say, Aha, yes, but it's too late. Attack that head-on. Quite simple, Your Honor. What this court said in Miller v. Ford, and again, Your Honor made mention of it a moment ago, is that if there is a clear repudiation of the claimed right to benefits, the statute of limitations, and by the way, we need to drill down a little further. Let's talk about the 502A1B claim, which is the benefits claim, borrowing the New Jersey contract law six-year statute of limitations. Here's what happened in Miller v. Ford, or here's what this court said. You just don't look at the expression clear repudiation in isolation. We apply, and again, this is made even further clear in the Romero opinion, the federal discovery rule because for the simple reason that would otherwise, the plaintiffs essentially, there is no limitations period. We have Mr. Martin first providing services in 1981, and he waits 24 years to sue. The federal discovery rule says this, did you know or should you have known? Now, as I said a moment ago, and it's a ready inference, and it cannot be disputed in these circumstances. When Mr. Martin, in 1981, started giving services to PSE&G, he was not provided one indicia of participation in these plans. Everything is to the contrary, notwithstanding his allegation that he is, for all purposes, a regular employee. Miller v. Ford, and again, speaks to the reposed nature of our interest here. We don't have to wait 25, 30, maybe 50 years before the plaintiff finally takes some affirmative actions here. The plan liabilities need to be established with certainty. Miller v. Ford also says there's an evidentiary interest that we can invoke. We don't have to litigate questions or dispute facts that are 30 years old at this point in time. Dr. Mullen says that plaintiff's knowledge that he's not covered is critical, correct? I mean that's his argument. Yes, to the tolling, I suppose. They didn't know, so the claims are tolled indefinitely. Would the fact that for 20 some odd years there apparently was no request for benefits, no application made, no go to a doctor, apply, go through insurance, years of no attempt to get an insurance card or apply for benefits, would that be evidence of plaintiff's knowledge that there was indeed no coverage? I think if you wait 24 years in these circumstances... Is that kind of like a latches argument? I haven't thought of it in those terms, possibly, Your Honor. But, again, under Miller v. Ford it tells us that we can't find ourselves in a position where, for example, you have to exhaust administrative remedies before there's finally an accrual of the claim. Now, by the way, that's just one of the two principal claims here. And I think it's very, very important also, again, to drill a little deeper into the breach of fiduciary duty claim. And for simplicity's sake, I'm going only to argue the six-year statute of limitations period. The statute in 29 U.S.C., Section 1113, has a three-year actual knowledge standard or a six-year standard. Again, for simplicity's sake, I'll argue only today the six-year statute of limitations. Under the particular statutory provision that I just spoke to, the claim accrues upon the last act, which constitutes the fiduciary breach. I don't think there's really any serious dispute here that that took place in Mr. Martin's case in 1981. He's collecting checks. No, I think Mr. Mullen said it occurred in April 2003 when his administrative claim was denied. Well, again, that aspect of this is covered. Well, so it's not undisputed. Well, what I'm saying is I think this Court's case law tells us, again, particularly Miller v. Ford, we cannot wait until the administrative claim is resolved. Otherwise, there is no statute of limitations, which I think speaks volumes of what's going on right here and now. But very quickly, on the breach of fiduciary duty claim, there's a six-year statute measured from when the last action constituting the breach takes place. And as Judge Barry mentioned, it is our view that that takes place upon the hiring of these three gentlemen in the 1980s. Now, by the way, again, Congress speaks with precision here. If you're to toll the six-year statute of limitations, the plaintiffs have to plead and prove fraud or concealment. And that's in the Rankey v. Sanofi case, which, by the way, is a 12B6 case, or this Court was reviewing a judgment entered under 12B6. And what that tells us, simply, there are no allegations here of that sort. And, in fact, the complaint is quite to the contrary. The plaintiffs were not defrauded. And if you're going to make these allegations, they're measured under Rule 9C because we're talking about fraud. They're not in there. I see my time's up, and I'm happy. They could have survived the statute of limitations, and they could have fashioned a complaint that says the company wanted to pretend it was a good employer. It had a plan, an ERISA plan, that provided these benefits. But, in fact, they hit the ball with their employees. They didn't disclose to the employees that they were entitled to these benefits, and they did so knowingly and fraudulently. And they could fashion a class action complaint that said that. I assume that's not a rhetorical question. No, I'm trying to understand your position. As I understand your position, what you're saying is that the clock begins to run when the employee doesn't get benefits. The employee doesn't get the card. I mean, you show up to work, and they don't cover you. So what you're saying, as I understand it, is you're on inquiry notice, then. If you have a problem with that, then go see a lawyer or do something about it. Your adversary, as I understand his position, is saying, no, the clock doesn't begin to run when you don't get your insurance card and your other benefits. The clock begins to run on whatever date you find a lawyer, and that lawyer tells you that you should have received benefits. But what I just heard you say was that if it's a fraud allegation, they could survive the statute as long as they pleaded fraud. If they pleaded with specificity. Now, there's a Unisys opinion. I believe it's cited in my brief. And what Unisys tells us in this context, given the way the statute is worded, what the plaintiff has to plead is additional facts with specificity above and beyond the underlying allegations of fiduciary breach that suggest cover-up. They could plead. I mean, assuming they met the heightened requirements of pleading fraud. Which this complaint does not. That's my position. They have pleaded cover-up. They have pleaded thereby providing a cover, called them independent contractors, thereby providing a cover to deny the individuals a risk of rights and privileges. But I'm not certain that's any different than the fiduciary breach, which was to misclassify them as independent contractors. In other words, I think that Unisys and Rule 9c tell us you have to plead a lot more to survive a challenge under 12e6 and to toll under 1113. I ask that the court affirm the district court in all regards. Thank you. So you don't want us on that? No, I was going to say something that you don't want us to rule in statute of limitations grounds since the district court didn't rule on that. So we wouldn't be affirming him. That was kind of nasty. But we'd be affirming on other grounds, right? We'd be affirming on other grounds. This court can always affirm on alternative grounds. I'm sorry. Do you think we should? Do I think we should? Yes. I think that, again, the nature of the allegations both made and left unmade, this court could readily reach the question easily. So you're not defensive about the grounds on which Judge Kavanaugh ruled? I don't believe so, Your Honor. I'm just playing a little. Mr. Mullen, what about the fraud aspect? Isn't that your elixir here? Let's assume that I and perhaps my colleagues are concerned about the policy question you raised about a company being able to hide the ball. If a company intentionally hides the ball, why isn't a fraud action the elixir here that gets you out of the statute of limitations problem? I think it very much so will be and should be. I use language like cover-up, as Judge Barrett just noted. In my complaint at page 838, I talk about intentional and wrongful conduct, about misrepresentations. But on the other hand, I was bound by Rule 11 not to go further than that. Now I have all the plans that were concealed. I draw Your Honor's attention to page 814.31 in Volume 4 where the company's lawyer says, when I'm asking once again for prior plan documents, quote, your client was never a participant in any of the PSEG plans as he was never an employee of any of its companies. You've just heard counsel concede that my client was a participant in prior plans. In fairness, Mr. Mullins, I understand that to have been a concession for purposes of making a 12B6 motion, not a judicial admission that your folks were common law employees. Let me say this, that the plans exist. The plans are before the court throughout Volume 3 of our appendix. And when you look at the definition of employee and you look at the definition of participant, as Judge Barrett correctly noted, it's clear as a bell that my clients were participants and were eligible under those plans right through, as Judge Barrett stated, approximately at the end of 1994. And so when the counsel for the company said that in writing to me, that was not true. That was false. And that was certainly the impression conveyed throughout my client's employment. Why should they seek benefits from this company? They have no rights to benefits from this company. They're not employees of this company. Well, speak, if you would, to the inquiry notice point that Judge Hardiman has raised, which is that once they're employed and they're under the impression that they're employees, I guess they think they're common law employees? No, they think they're employees of some entity called Butler or some other company. And they think they work for some company that then hires them and sends them to work at TSC&G. Well, if that's true, then why did Mr. Martin ever make an application? If he never thought he was entitled to benefits, what prompted him to make an application to the administrative process? The answer is there's nothing in the record that addresses that issue because this was thrown out on a 12b-6. I have theories and ideas about it, some of which involve my attorney-client communications with my client, but certainly that can be developed and should be developed, if necessary, below. We should never have been dismissed. A case that involves these kinds of allegations never should have been dismissed without the court even taking cognizance of the evidence before it, the written 1980s and 1990s plans. Do you agree that it's a statute of repose rather than merely a statute of limitation? Your Honor, I don't fully understand that distinction. I can say this, though. Counsel was referring to the Miller case. The Miller case doesn't have bearing upon this case because the Miller case specifically says that the appellant in that case waived their fiduciary claims. So here we're raising substantial claims of violation of fiduciary duty because of intentional misleading statements. That's a different story that was not addressed in Miller, Your Honor. Well, it wasn't addressed by the district court either. What relief do you seek from us? I would like the order of the court below reversed, and I would like the matter remanded. Counsel, of course, is entitled to raise below the issue of statute of limitations and any other issues, and we should proceed through discovery, and there should be a motion for summary judgment. We're dealing with issues of fraud and misrepresentation. There should be a full exploration of it. These are important issues. Well, to reverse the district judge, and even if we – to reverse the district judge, he ruled on standing. I mean, it was standing. Yes. And we would have to find that you have standing. Yes. Of course, nobody's argued pro or con today on that issue. Well, Your Honor, I hope we've argued thoroughly in our briefs that we have standing because they were conceivably for purpose of the motion, common law, and they're eligible to the claim. And standing. So I respectfully ask that the court reverse and remand further proceedings and discovery so that the court can properly and fairly evaluate the issues raised by the defense. Thank you very much for your time. Thank you very much. The case was really well argued, and we will take it under advisement.